508 A.2d 976
**John Edward BOOTH a/k/a Marvin Curtis Booth**

v.

**STATE of Maryland.**

**No. 62, Sept. Term, 1985.**

Court of Appeals of Maryland.

May 22, 1986.

Barbara L. Matthews, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Valerie J. Smith, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

McAULIFFE, Judge.

John E. Booth was convicted in the Circuit Court for Baltimore City of the premeditated murder and armed robbery of James Edward ("Pie") Ross, and was sentenced by

Judge Martin Greenfeld to consecutive terms of life and twenty years imprisonment. Booth appealed to the Court of Special Appeals, contending that the trial judge erred in admitting hearsay evidence, and in instructing the jury. The Court of Special Appeals affirmed, *Booth v. State*, 62 Md.App. 26, 488 A.2d 195 (1985), and we granted certiorari to consider the question of the admissibility of evidence under the present sense impression exception to the hearsay rule.

At trial, the State proffered evidence that Regina Harrison telephoned Ross between 5:30 and 6:00 p.m. on the day of his murder. Harrison testified that Ross said he was getting ready to prepare dinner and was going to ask his company, a girl named Brenda, to leave. Harrison said she then heard the door at Ross' home open and questioned Ross as to who was there. Ross told Harrison that Brenda was talking to "some guy" behind the door. According to Harrison, the general tone of the conversation was normal and Ross did not sound nervous or anxious.

Booth objected to the testimony of Harrison on the ground that it was impermissible hearsay. The trial judge admitted the testimony, concluding that it fell within the present sense impression exception to the hearsay rule.[1] Judge Greenfeld said in his well considered oral opinion:

> It seems to me that the present sense impression has as much reliability as the excited utterance exception or res gestae exception as it is sometimes called, and may even be more accurate, since the Maryland Court of Appeals permits excited utterances to be admitted under the proper circumstances as an exception to the hearsay rule. I see no reason why present sense impression should not also be admitted if reliability exists. So in the general

---

1. Judge Greenfeld carefully distinguished between that part of the conversation which was a contemporaneous account of the occurrence, and that which was a report of a statement made by Brenda at an undisclosed earlier time. The latter statement, to the effect that Brenda had told Ross she wanted $2.50 for "a bag of reefer," was excluded.

sense I find that reliability does exist here because there would be no reason for Mr. Ross to inaccurately state to Miss Harrison over the telephone that Brenda was there or that she was talking to somebody at the door. And, of course, the jury can evaluate her demeanor and the accuracy of, and reliability, and trustworthiness of the statement themselves.

Booth argues that Maryland should not adopt the present sense impression exception because the mere contemporaneity of a statement and an allegedly perceived event does not establish trustworthiness. Alternatively, Booth contends that even if the exception is adopted this testimony should not be admitted because there was no corroboration by an "equally percipient witness."

The present sense impression exception has its origins in what was known as the "res gestae" exception to the hearsay rule.[2] The term "res gestae" came into usage in discussion of admissibility of declarations in the early 1800's. *McCormick on Evidence* § 288, at 686 (2d ed. E. Cleary 1972); 6 J. Wigmore, *Evidence* § 1767, at 253–59 (Chadbourn Rev.1976). As Professor McCormick points out, the term is more generic than particular and includes within its definition four distinct exceptions: declarations of present bodily condition; declarations of present mental states and emotions; excited utterances; and declarations of present sense impressions. *McCormick on Evidence, supra,* § 288, at 686. Although the term res gestae is now condemned in academic circles, the exceptions included within its definition are recognized by most scholars.[3]

---

**2.** Res gestae is a Latin phrase meaning "things done." *Black's Law Dictionary* 1173 (5th ed. 1979).

**3.** *See, e.g.,* 6 J. Wigmore, *Evidence* § 1767, at 255 (Chadbourn Rev. 1976) ("The phrase 'res gestae' has long been not only entirely useless, but even positively harmful."); Morgan, *A Suggested Classification of Utterances Admissible as Res Gestae,* 31 Yale L.J. 229 (1923) ("The marvelous capacity of a Latin phrase to serve as a substitute for reasoning and the confusion of thought inevitably accompanying the use of inaccurate terminology, are nowhere better illustrated than in

The present sense impression exception was first defined by the evidence scholar, James Bradley Thayer, when he reviewed res gestae cases in 1881.[4] Thayer reported what he considered to be a longstanding rule of admissibility which grew out of the res gestae concept:

> The exception to the hearsay rule which is now mentioned takes notice of one of these strong elements of authenticity, contemporaneousness; it deals, however, not with memoranda signed by the parties, but with statements, oral or written, made by those present when a thing took place, made about it, and importing what is present at the very time,—present, either in itself or in some fresh indications of it, to the faculties of the witness as well as of the declarant.
>
> *       *       *       *       *       *
>
> The leading notion in the doctrine ... seems to have been that of withdrawing from the operation of the hearsay rule declarations of fact which were very near in time to that which they tended to prove, fill out, or illustrate,—being at the same time not narrative, but

---

the decisions dealing with the admissibility of evidence as 'res gestae.' It is probable that this troublesome expression owes its existence and persistence in our law of evidence to an inclination of judges and lawyers to avoid the toilsome exertion of exact analysis and precise thinking."); Thayer, *Bedingfield's Case—Declarations as a Part of the Res Gesta,* (Part II) 15 Am.L.Rev. 1, 10 (1881) ("[P]hrase did ... what a 'catch-all' does for a busy housekeeper or an untidy one—some things belonged there, other things might, for purposes of present convenience, be put there."); *United States v. Matot,* 146 F.2d 197, 198 (2d Cir.1944) ("[A]s for 'res gestae' ... if it means anything but an unwillingness to think at all, what it covers cannot be put in less intelligible terms.") (L. Hand, J.).

**4.** The case most commonly cited to illustrate the recognition of the exception is *Houston Oxygen Co. v. Davis,* 139 Tex. 1, 161 S.W.2d 474 (Tex.Comm'n App.1942, Op.Adopted). *See McCormick on Evidence* § 298, at 861 (3d ed. E. Cleary 1984). In *Houston Oxygen,* the Texas Supreme Court held it was error to exclude testimony of a witness that when plaintiff's car passed her about four miles before the traffic accident, the witness said that "they must have been drunk, that we would find them somewhere on the road wrecked if they kept that rate of speed up." 161 S.W.2d at 476.

importing what was then present or but just gone by, and so was open, either immediately or in the indications of it, to the observation of the witness who testifies to the declaration, and who can be cross-examined as to these indications. Thayer, *Bedingfield's Case—Declarations as a Part of the Res Gesta,* (Part III) 15 Am.L.Rev. 71, 83, 107 (1881).[5]

However, one of Thayer's most influential students, Dean Wigmore, in his 1904 evidence treatise refused to recognize the present sense impression exception, claiming that contemporaneousness of event and descriptive statement, without more, did not guarantee the statement's trustworthiness. 6 J. Wigmore, *Evidence* § 1747, at 195–98 (Chadbourn Rev.1976).

Thayer's formulation of the present sense impression exception was revived by Edmund Morgan. Professor Morgan pointed out:

A statement by a person as to external events then and there being perceived by his senses is worthy of credence for two reasons. First, it is in essence a declaration of a presently existing state of mind, for it is nothing more than an assertion of his presently existing sense impressions. As such it has the quality of spontaneity.... Second, since the statement is contemporaneous with the

---

**5.** In response to the furor in the English press to the case of *Regina v. Bedingfield,* [no official cite], Thayer wrote his article in order to place the doctrine of res gesta or res gestae "in a more intelligible shape." Thayer, *Bedingfield's Case—Declarations as a Part of the Res Gesta,* (Part I) 14 Am.L.Rev. 817 (1880). In the Bedingfield case, the defendant was charged with the murder of his mistress. As reported in *The London Times,* Bedingfield had gone into a room where the victim was, and "in a minute or two," the victim emerged from the room with her throat slashed. The victim, "bleeding very much, and seeming very much frightened," said to a witness, "Oh, aunt, see what Bedingfield has done to me." Lord Chief Justice Cockburn refused to admit the evidence at trial, stating it was not part of the res gestae, "for it was not part of anything done, or something said while something was being done, but something said after something done." The defendant was nevertheless convicted of the murder without the evidence, but the Justice's ruling precipitated a controversy that was to assist in the development in this area of the law of evidence.

320

event, it is made at the place of the event. Consequently the event is open to perception by the senses of the person to whom the declaration is made and by whom it is usually reported on the witness stand. The witness is subject to cross-examination concerning that event as well as the fact and content of the utterance, so that the extra-judicial. statement does not depend solely upon the credit of the declarant.

Morgan, *A Suggested Classification of Utterances Admissible as Res Gestae*, 31 Yale L.J. 229, 236 (1922).

Currently, a present sense impression is excepted from the operation of the hearsay rule by the Federal Rules of Evidence, and by a majority of states. Additionally, this exception is recognized by the Model Code of Evidence, Rule 512(a), and by the Uniform Rules of Evidence (1974), Rule 803(1). Fed.R.Evid. 803(1) provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(1) *Present sense impression.* A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.

The underlying theory of this exception is that "substantial contemporaneity of event and statement negative the likelihood of deliberate or conscious misrepresentation." Advisory Committee Note, Fed.R.Evid. 803(1). The Note further states that "in many, if not most, instances precise contemporaneity is not possible, and hence a slight lapse is allowable." Although the Note does not state that the witness must be the declarant, it indicates that "if the witness is not the declarant, he may be examined as to the circumstances as an aid in evaluating the statement." Finally, the Note limits the permissible subject matter under the exception to a "description or explanation of the event or condition, the assumption being that spontaneity, in the absence of a startling event, may extend no farther."

At least twenty-eight states recognize this exception to the hearsay rule in their codified evidence codes, most of which have been patterned after the Federal Rules of Evidence. *See, e.g.,* Alaska R.Evid. 803(1) (eff. 1979); Ariz. R.Evid. 803(1) (eff. 1977); Ark.R.Evid. 803(1) (eff. 1976); Cal.Evid.Code § 1241 (eff. 1967); Colo.R.Evid. 803(1) (eff. 1980); Fla.Evid.Code § 90.803(1) (eff. 1979); Hawaii R.Evid. 803(b)(1) (eff. 1981); Idaho R.Evid. 803(1) (eff. 1985); Iowa R.Evid. 803(1) (eff. 1985); Kan.Code Civ.P. § 60–460(d)(1) (eff. 1963); Me.R.Evid. 803(1) (eff. 1976); Mont.R.Evid. 803(1) (eff. 1977); Nev.Rev.Stat. tit. 4, § 51.085 (eff. 1971); N.H.R.Evid. 803(1) (eff. 1985); (N.J.R.Evid. 63(4)(a) (eff. 1967); N.M.R.Evid. 803(1) (eff. 1976); N.C.R.Evid. 803(1) (eff. 1984); N.D.R.Evid. 803(1) (eff. 1977); Ohio R.Evid. 803(1) (eff. 1980); Okla.Evid.Code § 2803(1) (eff. 1978); S.D. R.Evid. § 19–16–5 (eff. 1978); Tex.R.Evid. 803(1) (eff. 1983); Utah R.Evid. 803(1) (eff. 1983); Vt.R.Evid. 803(1) (eff. 1983); Wash.R.Evid. 803(a)(1) (eff. 1979); W.Va.R.Evid. 803(1) (eff. 1985); Wis.R.Evid. 908.03(1) (eff. 1974); Wyo.R.Evid. 803(1) (eff. 1978). Colorado's rule requires precise contemporaneity and deletes the words "or immediately thereafter" found in the Federal Rule. Florida and Ohio add language that a present sense impression is admissible unless the statement is made under circumstances that indicate its lack of trustworthiness. Fla.Evid.Code § 90.803(1); Ohio R.Evid. 803(1). The Ohio Staff Note explains that the additional language serves to narrow the availability of the exception by vesting discretion in the trial judge.

Most commentators, with the notable exception of Dean Wigmore, recognize the present sense impression exception. The exception was approved in *McCormick on Evidence* § 298, at 860 (3d ed. E. Cleary 1984):

Although [present sense impression] statements lack whatever assurance of reliability there is in the effect of an exciting event, other factors offer safeguards. First, since the report concerns observations being made at the time of the statement it is safe from any error caused by a defect of the declarant's memory. Second, a require-

ment that the statement be made contemporaneously with the observation means that there will be little or no time for calculated misstatement. Third, the statement will usually have been made to a third person (the witness who subsequently testifies to it) who, being present at the time and scene of the observation, will probably have an opportunity to observe the situation himself and thus provide a check on the accuracy of the declarant's statement, i.e. furnish corroboration. Moreover, since the declarant himself will often be available for cross-examination, his credibility will be subject to substantial verification before the trier of fact. (Footnotes omitted.)

In J. Weinstein & M. Berger, *Weinstein's Evidence* paragraph 803(1)[01] (1985), the Federal Rule was explained as follows:

Underlying Rule 803(1) is the assumption that statements of perception substantially contemporaneous with an event are highly trustworthy because:

(1) the statement being simultaneous with the event, there is no memory problem; (2) there is little or no time for calculated misstatement, and (3) the statement is usually made to one who has equal opportunity to observe and check misstatements.

This exception has been viewed with favor by those who fear that excitement—such as that required by the excited utterance exception—operates to impair the accuracy of perception. The exception is useful in admitting statements uttered minutes before the event in question and before the declarant was aware that something startling was about to happen. (Footnotes omitted.)

D. Binder, *Hearsay Handbook* 89 (2d ed. 1983, 1985 Cum.Supp.) said:

An out-of-court assertion that describes or explains a present sense impression is excepted to the hearsay rule in the federal courts and in an increasing number of state courts, regardless of the availability of declarant at trial. . . .

Declarant need not be excited or otherwise emotionally affected by the event or condition. The trustworthiness of the assertion arises from its timing. The requirement of contemporaneousness, or near contemporaneousness, reduces the chance of premeditated prevarication or loss of memory.

If you turn on your radio during a baseball game, you will be inundated by present sense impressions. The utterances of the sportscaster describing and explaining what he observes on the playing field as it is taking place are quintessential present sense impressions. But the sportcaster's between-innings or post-game analysis would not qualify for this hearsay exception, for lack of contemporaneity.

If a present sense impression is made under stress of excitement from the event or condition that it describes or explains, then it overlaps with the exception for an excited utterance (Exception 2). This is often the case. For example, if a sportscaster is excited by the sporting event that he is watching, his play-by-play description qualifies both as a present sense impression and an excited utterance. If he is bored by it, his description qualifies only as a present sense impression.

Maryland has long recognized a "res gestae" exception to the hearsay rule. *Wright v. State,* 88 Md. 705, 41 A. 1060 (1898). *See also Mouzone v. State,* 294 Md. 692, 452 A.2d 661 (1982). Adhering to the older usage of res gestae, Maryland has firmly endorsed the analogous "excited utterance" exception. *See, e.g., Mouzone v. State, supra; Stevens v. State,* 232 Md. 33, 192 A.2d 73, *cert. denied,* 375 U.S. 886, 84 S.Ct. 160, 11 L.Ed.2d 115 (1963); *Grier v. Rosenberg,* 213 Md. 248, 131 A.2d 737 (1957); *Tittlebaum v. Penna. R. Co.,* 167 Md. 397, 174 A. 89 (1934); *Neusbaum v. State,* 156 Md. 149, 143 A. 872 (1928); *Wright v. State, supra. See also Moore v. State,* 26 Md.App. 556, 338 A.2d 344 (1975); *Smith v. State,* 6 Md.App. 581, 252 A.2d 277 (1969).

**324**

■ As observed by the Advisory Committee to the Federal Rules, the "excited utterance" and "present sense impression" exceptions "overlap, though based on somewhat different theories." Advisory Committee Note, Fed. R.Evid. 803(1). The underlying rationale of the two exceptions are similar, *i.e.*, both preserve the benefit of spontaniety in the narrow span of time before a declarant has an opportunity to reflect and fabricate. We conclude that the "present sense impression" exception to the hearsay rule rests upon a firm foundation of trustworthiness, and we adopt it in the form in which it appears at Fed.R.Evid. 803(1).

■ We turn to a consideration of practical problems that may be encountered in the application of this exception. Initially, we consider the question of requisite spontaneity. Although statements offered under this exception will usually be those made at the time an event is being perceived, we recognize that precise contemporaneity is not always possible, and at times there may be a slight delay in converting observations into speech. However, because the presumed reliability of a statement of present sense impression flows from the fact of spontaneity, the time interval between observation and utterance must be very short. The appropriate inquiry is whether, considering the surrounding circumstances, sufficient time elapsed to have permitted reflective thought. *See McCormick on Evidence* § 298, at 862 (3d ed. E. Cleary 1984). In the words of Professor Jon Waltz, "absent some special corroborative circumstance, there should be no delay beyond an acceptable hiatus between perception and the cerebellum's construction of an uncalculated verbal description." Waltz, *The Present Sense Impression Exception to the Rule Against Hearsay: Origins and Attributes,* 66 Iowa L.Rev. 869, 880 (1981).

■ Next, we consider the extent to which there must be proof that the declarant is speaking from personal knowledge before the statement may be admitted. Al-

though the declarant need not have been a participant in the perceived event, it is clear that the declarant must speak from personal knowledge, *i.e.*, the declarant's own sensory perceptions. The more difficult question involves the quantity and quality of evidence required to demonstrate the existence of the requisite personal knowledge. We conclude that in some instances the content of the statement may itself be sufficient to demonstrate that it is more likely than not the product of personal perception, and in other instances extrinsic evidence may be required to satisfy this threshold requirement of admissibility.[6] Identification of the declarant, while often helpful in establishing that he or she was a percipient witness, is not a condition of admissibility. When the statement itself, or other circumstantial evidence demonstrates the percipiency of a declarant, whether identified or unidentified, this condition of competency is met.

An additional problem often encountered in the consideration of this exception to the hearsay rule is the tendency of a spontaneous declarant to characterize that which is being observed in language that involves, or often appears to involve, the opinion of the speaker. As we noted in *Ellsworth v. Sherne Lingerie, Inc.*, 303 Md. 581, 609, 495 A.2d 348 (1985), the line between "fact" and "opinion" is often difficult to draw. A statement that at first blush appears to represent the opinion of the speaker may prove upon more careful analysis to be non-judgmental in character, or it may represent a shorthand rendition of facts. Additionally, we recognize that evidence which enjoys a significant presumption of reliability, and which may be of significant assistance to the trier of fact in arriving at the truth of the matter may be lost if it is excluded because perceptions are cast in opinion form. Professor Morgan in

---

6. Because the question of admissibility is solely for the court, testimony otherwise inadmissible, including reasonably reliable hearsay, may be received out of the presence of the jury for the purpose of determining whether the declarant spoke from personal knowledge.

*Basic Problems of State and Federal Evidence* ch. 13, at 300 (5th ed. J. Weinstein 1976) commented upon the problem as follows:

> And it is absurd to insist that the statement must not be phrased in terms of inference or opinion. People speaking without reflection usually talk in terms of inference in describing what they have seen or heard. So long as the language does not indicate a conscious deduction, rather than a shorthand method of statement, the opinion rule should have no application. But the cases are in conflict; the majority reject opinion if it expresses blame or fault; in other situations the cases are more nearly evenly divided. (Footnotes omitted.)

We concur generally with the views expressed by Professor Jon Waltz:

> The indiscriminate generalization is often made that spontaneous utterances, excited or otherwise, in the form of an opinion or conclusion are inadmissible. This generalization has been branded "absurd" by Morgan and it assuredly wants more careful analysis than it has gotten in the past.
>
> It is useful to contrast, on one hand, contemporaneous declarations cast in the form of a conclusion and, on the other, later direct in-court testimony that is conclusory in form. In-court opinion testimony has been disfavored, although less so under the Federal Rules of Evidence than before, because it is often the speculative hindsight of one who, having been summoned as a witness in a litigated dispute, is obviously aware of the existence of the litigation and who has had ample time and perhaps identifiable motive to reflect and concoct. Except when backward-looking narrations of in-court witnesses are the inescapable shorthand of one who is attempting, as best he can, to reconstruct and articulate observed facts, they represent a choosing of sides by the witness and are to be excluded from evidence not so much because they "invade the province of the jury," as once was the standard judicial response, as because they simply are not helpful

to the factfinder and may be positively confusing. The situation is similar, and induces a like judicial response, when an out-of-court declarant has made a backward-looking characterization of events, especially when it has not been demonstrated that he was himself an observer of those events.

However, these situations are markedly different from the situation in which a percipient observer has made a contemporaneous statement in conclusory form . . . If the out-of-court declaration is not the sort of conscious deduction which the conditions attaching to the present sense impression exception would themselves prohibit, it should be receivable as a shorthand fact description. Waltz, *supra,* 66 Iowa L.Rev. at 881–82 (footnotes omitted).

Finally, there is the difficult question of whether a present sense impression must be corroborated by an independent and equally percipient observer. Examination of the Federal Rule reveals that nothing in the language of the rule purports to require corroboration. Furthermore, as pointed out by several commentators, the drafters of the Federal Rules knew how to word a requirement of corroboration, and did not do so. *See, e.g., McCormick on Evidence* § 298, at 863 (3d ed. E. Cleary 1984); Waltz, *supra,* 66 Iowa L.Rev. at 890.

The federal and state courts are not in accord as to whether corroboration is required for admission of a statement. In the case most often cited on this question, *Houston Oxygen Co. v. Davis,* 139 Tex. 1, 161 S.W.2d 474 (Tex.Comm'n App.1942, Op.Adopted), reliance was placed on the fact that "the statement will usually be made to another (the witness who reports it) who would have equal opportunities to observe and hence to check a misstatement." 161 S.W.2d at 477.

Since *Houston Oxygen,* some courts have rejected the contention that there must be corroboration by witnesses who were in the same position to observe the described event. *United States v. Medico,* 557 F.2d 309 (2d Cir.),

*cert. denied,* 434 U.S. 986, 98 S.Ct. 614, 54 L.Ed.2d 480 (1977); *United States v. Obayagbona,* 627 F.Supp. 329 (E.D.N.Y.1985); *State v. Flesher,* 286 N.W.2d 215 (Iowa 1979); *Commonwealth v. Coleman,* 458 Pa. 112, 326 A.2d 387 (1974). Others have considered corroboration of an equally percipient witness a factor in guaranteeing the trustworthiness of a statement. *United States v. Blakey,* 607 F.2d 779 (7th Cir.1979); *Robinson v. Shapiro,* 484 F.Supp. 91 (S.D.N.Y.1980); *United States v. Narciso,* 446 F.Supp. 252 (D.C.Mich.1977); *MCA, Inc. v. Wilson,* 425 F.Supp. 443 (S.D.N.Y.1976). At least two courts have refused to admit statements of present sense impression that were not corroborated. *In Re Japanese Electronic Products,* 723 F.2d 238 (3d Cir.1983); *rev'd on other grounds, Matsushita Elec. Ind. Co. v. Zenith Radio,* —— U.S. ——, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *People v. Watson,* 100 A.D.2d 452, 474 N.Y.S.2d 978 (1984).

Professor Waltz, in tracing the development of the present sense impression exception from Thayer's article to the present, concluded:

> [I]t will be recognized that Thayer never insisted on corroboration by an equally percipient witness. He certainly did not insist on it when the declarant was the in-court narrator of his own out-of-court declaration and, although Thayer did not address the point, he might not have insisted on it in those uncommon instances in which the out-of-court declarant is available but is not produced in court by the proponent of his declaration. And Thayer did not insist that an in-court witness serving as a testimonial conduit for an out-of-court sense impression declaration must have perceived everything which was apparently open to the declarant's faculties. Thayer believed in the pebble-in-the-pond principle. Every consequential act, like the stone thrown into water, produces ripples which extend outward after the stone has sunk from sight. These are the "fresh indications" of the event to which Thayer repeatedly referred in sketching the content of anticipated corroboration.... [T]estimony attest-

ing the existence of the corroborating ripples generated by the event, of that event's surrounding circumstances, may occasionally be adequately supplied by someone other than the witness who heard and transmits to the factfinder the sense impression which described the event.

Waltz, *supra*, 66 Iowa L.Rev. at 898 (footnotes omitted). Another commentator on the exception stated:

The suggestion has been made that corroboration by an "equally percipient" witness should be recognized as a further requirement for admitting statements of present sense impression into evidence. The proposal represents a radical departure from the general pattern of exceptions to the hearsay rule. The only instance in which a requirement of corroboration is found is where a statement against penal interest by a third person, e.g. a third party confession, is offered by way of exculpation of an accused person. There the common law had set its face strictly against admission in evidence. In order to increase the acceptability of a reversal of this position, the Advisory Committee incorporated in Federal Rule 804(b)(3) a requirement that the hearsay statement be corroborated. The present sense impression exception offers no such need; its underlying rationale offers sufficient assurances of reliability without the superaddition of a further requirement of corroboration.... It is true, of course, that the limits of the exception in terms of time and subject matter in and of themselves almost automatically insure that the witness who reports the making of the statement must have himself perceived the actual event or at least have perceived circumstances strongly suggesting the event. This aspect has been mentioned by the writers as an added assurance of accuracy, but a justification for admission is not the same as a requirement for admission. The matter had better be left for consideration as an aspect of weight and sufficiency of the evidence rather than becoming an added needlessly complicating requirement for admissibility. *McCormick*

*on Evidence* § 298, at 862–63 (3d ed. E. Cleary 1984) (footnotes omitted).

We reject the contention that corroboration by an equally percipient witness is required as a condition to the admissibility of a statement of present sense impression. As we have noted, extrinsic evidence may sometimes be required to demonstrate the contemporaneity of the statement, or to show that it is the product of personal perception by the declarant. Accordingly, it may be correct in a particular case to say that "corroboration" is required, but this does not mean that corroboration is required in every instance, or that the corroboration must be that of an equally percipient witness. Even when not required for admissibility, corroboration (or the lack thereof) may be important in determining the weight to be given the statement.

In arguing against recognition of the present sense impression exception, Appellant has cited *Neusbaum v. State, supra.* He contends that in *Neusbaum* this Court rejected the concept of present sense impression. We do not agree, but we think it helpful to discuss in greater detail the features which distinguish that case from this. In *Neusbaum* the defendant had been convicted of manslaughter arising out of the criminally negligent operation of a motor vehicle that caused the death of a pedestrian. In order to identify the vehicle that struck the pedestrian and then left the scene, the State offered the testimony of Simms, an occupant of a car parked nearby, concerning statements made by Mrs. Schmidt, also an occupant of Simms' vehicle. According to Simms, just as the accident occurred, Schmidt cried out, "Oh, he ran right over that man" and at that time she said, "Get his number." Simms said Schmidt then wound down the window of the car and said, "1–1–6–4—1–1–6–4—and I think a 9." *Id.,* 156 Md. at 163–64, 143 A. 872. Our predecessors held that this testimony should have been excluded as hearsay, and from that holding Appellant argues that this Court has rejected the concept of present sense impression as an exception to the hearsay rule. Appellant's argument is facially appealing because the facts of

*Neusbaum* would seem to support the admissibility of Schmidt's statements as present sense impressions. However, a careful review of the brief filed by the Appellant in *Neusbaum* discloses that his argument was limited to whether the statements qualified as a part of the res gestae, and whether "the main transaction had been completed and [the] declaration amounted to [a] mere recital of events." Neusbaum brief, at 34. This Court accepted Neusbaum's argument, holding that "[h]er statement did not relate to the accident, but was a narrative of what she had discovered after the accident." *Neusbaum, supra,* 156 Md. at 164, 143 A. 872. Nowhere in the briefs filed in that case, nor in the opinion of the Court is there any indication that the Court was asked to, or did, consider the admissibility of the statements as present sense impressions.[7]

■ The content of the statement with which we are concerned in this case, at least when coupled with the evidence of what Harrison heard in the background, offered sufficient evidence that Ross was describing events he was personally witnessing, and that his description of those events was being given contemporaneously with their occurrence. There were no extrinsic circumstances indicating to the contrary. After directing the excision of that part of the statement which apparently represented a recitation of earlier events, the trial judge properly admitted the balance of the statement pursuant to the present sense impression exception to the hearsay rule.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY APPELLANT

---

7. Although the court found the statements of Mrs. Schmidt should not have been admitted, it held the error harmless. The conviction was reversed, however, because the trial court had allowed the State's Attorney to inquire of Neusbaum as to whether he had not purchased the "high powered" Packard roadster "with an open rumble seat in the rear" for "the purpose of rum-running." *Neusbaum v. State,* 156 Md. 149, 164–65, 143 A. 872 (1928).